José María y Juan Franceschi, Domingo, Salvador y Estrella Leandri y Angel y Blanca Massari, peticionarios, *v.* La Corte de Distrito de Ponce, Hon. Domingo Sepúlveda, Juez, y López de Tord & Zayas Pizarro, demandados.

No. 896.—*Sometido:* Mayo 6, 1933. *Resuelto:* Noviembre 7, 1933.

*Henry G. Molina y M. León Parra,* abogados de los peticionarios; *López de Tord & Zayas Pizarro,* por su propio derecho.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Los Sres. López de Tord y Zayas Pizarro, abogados del administrador judicial en el juicio de testamentaría promovido por los herederos de Francisco María Franceschi, presentaron detalladamente una relación de los servicios profesionales que, según alegan, prestaron a la administración judicial. Valoran dichos servicios en la cantidad de $125,000 y exponen que debido a la naturaleza de los bienes de la Suce-

sión Franceschi, su cuantía, la diversidad de litigios presentados en pro y en contra de la sucesión, el carácter de los servicios prestados, y otras circunstancias que constan de autos, la herencia íntegra ha estado en cierto modo bajo su control, no existiendo parte alguna de la misma sobre la cual no hayan tenido que discutir, defender o intervenir en alguna forma. Alegan que sus gestiones en cuanto a los herederos de José María Franceschi han sido de carácter universal, así como en cuanto a las relaciones y diferencias que han existido entre los propios herederos, las cuales han sido reajustadas y liquidadas con su intervención y consejo. Basados en la diversidad de las gestiones realizadas y en la íntima conexión de unas con otras entienden los abogados mencionados que "se hace imposible determinar o señalar la valoración separada a cada partida, ni a ningún grupo de trabajo consignado en detalle, ya que un servicio o una gestión ha estado íntimamente relacionado con otro." Es por esta razón que se fija a los servicios prestados un valor o precio alzado de $125,000.

Los herederos no estuvieron conformes con la cantidad que reclaman los abogados por sus servicios profesionales y éstos solicitaron que, a tenor de lo dispuesto en el artículo 205 y siguientes del Código de Enjuiciamiento Civil, se nombraran árbitros para determinar las cuestiones en controversia. Entienden los Sres. López de Tord y Zayas Pizarro que la liquidación y determinación de sus honorarios exigen el examen de una larga cuenta y opinan que procede el nombramiento de árbitros de acuerdo con la Ley de Enjuiciamiento Civil.

Niegan los herederos que la liquidación y determinación de la referida reclamación exija el examen de una larga cuenta o de cuenta alguna, y que sean aplicables al presente caso los artículos 205 y siguientes de la Ley Procesal Civil. También alegan que en caso de no prevalecer esta defensa la corte, en uso de su discreción, no debería dictar la orden solicitada y encomendar la decisión del caso a los distinguidos abogados propuestos por los Sres. López de Tord y Zayas Pizarro como

candidatos aceptables para el arbitraje, o cualesquiera otros abogados de Ponce, porque todos son amigos o vecinos de los Sres. López de Tord y Zayas Pizarro, y como tales no podrían actuar desinteresadamente, ya que se inclinarían a favor de sus amigos y compañeros, o procurarían en lo posible no enemistarse con ellos mediante un fallo en su contra.

■■ Aceptan los herederos que los Sres. López de Tord y Zayas Pizarro fueron contratados como abogados y que prestaron servicios a la administración judicial, pero consideran excesiva la cantidad reclamada y dicen que debe fijarse en la reclamación de servicios el valor de cada asunto o pleito. Así lo manifestó en audiencia pública el Sr. Pablo Vecchini, apoderado de uno de los herederos, cuando refiriéndose al Sr. Zayas Pizarro, dijo: ". . . y presentó una cuenta a la corte, más o menos, sin fijar precio ninguno, porque si el Sr. Zayas Pizarro pusiera a cada asunto, a cada caso, un precio, yo quiero saber cómo él se haría para llegar a $125,000. Por eso quisiera que él pusiera un precio a cada caso." Estas manifestaciones aparecen prácticamente incorporadas en la moción que presentaron los herederos con motivo de la orden de 9 de agosto de 1932, acordando una vista sobre la petición de honorarios. Alegaron los herederos en esta ocasión que la corte no debería considerar la referida petición en cuanto a los honorarios "sin que en la misma o en una relación detallada que la acompañe se fije por los abogados la suma que reclaman por cada uno de los distintos asuntos, no por cada trabajo aislado, sino por cada asunto, como por ejemplo, el caso de ejecución de hipoteca establecido contra 'Knights of Columbus' y asimismo por cada uno de los diferentes asuntos que han llevado los Sres. López de Tord y Zayas Pizarro en representación del administrador o de los administradores judiciales." Los abogados arguyen que se hace imposible valorar separadamente cada partida o cualquier grupo de trabajo consignado en detalle, y sostienen la relación que han presentado de sus servicios, la cual, a nuestro juicio, no constituye una larga cuenta. Se fija una suma alzada, abarcando todos

los servicios que se dice han sido prestados a la administración judicial, y se alega que estos servicios constituyen una larga cuenta. No estamos de acuerdo. Los servicios profesionales pueden, en ciertos casos en que concurren circunstancias especiales, envolver una larga cuenta, pero sostenemos que ese caso no se ha presentado en esta ocasión, y que no hay base para resolver favorablemente la solicitud de los abogados. Consideramos muy acertadas las siguientes manifestaciones del Juez Todd que aparecen en el récord:

"El Sr. Zayas Pizarro ha hablado de la cuenta, pero en realidad de verdad la firma López de Tord & Zayas Pizarro no ha presentado cuenta alguna; ha presentado un detalle de trabajos, pero no lo han valuado. A los efectos de la sucesión y de los herederos, me parece que eso les ha servido de muy poco porque ellos no pueden hacer un cálculo de cuánto vale ese trabajo, porque hay algunos abogados que ese mismo trabajo lo tasarían en un precio y otros en otro; el señor Zayas Pizarro debió haberlo comprendido y debió irle poniendo su precio, y hasta esa fecha la sucesión hubiera sabido más o menos cuánto valía ese trabajo, porque lo que hay es un detalle: En el pleito tal se ha hech- -o y esto, y así; un detalle de todo el trabajo y cartas y consultas, ero propiamente dicho no es una cuenta porque no se le ha dado valor, la parte interesada no le dió valor."

En el caso de *Russell* v. *McDonald,* 125 App. Div. 845, la corte se expresó así:

"Si bien es cierto que un abogado no está impedido de demandar un arbitraje compulsorio basándose en que el juicio de su reclamación para recaudar el valor de los servicios envolvería el examen de una larga cuenta (Feeter v. Arkenburgh, 147 N. Y. 237), sin embargo la tendencia de los tribunales es rechazar tal arbitraje (citas), excepto en casos extremos cuando es razonablemente aparente que las partidas son tan numerosas que un jurado no pueda retenerlas en la mente y formar la debida conclusion. (Se citan varios casos.)"

El argumento de que en ciertos casos las partidas son tan numerosas que el jurado no puede retenerlas en su mente, que se tiene muy en cuenta por los tribunales americanos, no tiene valor alguno entre nosotros, donde no existe el juicio por jurado en casos civiles. No quiere decir esto que los servicios

profesionales de un abogado no puedan ser objeto de arbitraje en casos realmente excepcionales y que las cortes insulares no tengan facultad para decretarlo, pero es evidente que una de las razones fundamentales utilizadas por los tribunales americanos no puede tenerse en cuenta en Puerto Rico.

Copiamos a continuación la opinión emitida por el Juez Laughlin en el caso de *Pace* v. *Amend,* 164 App. Div. 206, en que los abogados Francis P. Pace y Henry C. S. Stimpson reclamaron una suma alzada por sus servicios profesionales:

"Esta acción fué entablada por una firma de abogados a fin de cobrar $100,000 por servicios profesionales prestados a base de un *quantum meruit.* Las alegaciones de la demanda son breves y meramente al efecto de que los servicios fueron rendidos entre el 12 de octubre de 1912 y la fecha de la iniciación del pleito, en el cual el emplazamiento lleva fecha 7 de agosto de 1913, y fueron realizados 'en torno a la adquisición, desarrollo y explotación de ciertas patentes y de materias relacionadas con ellas, así como en cuanto a la organización y funcionamiento de la demandada Wolfram Wire Company.' Las contestaciones de los apelantes son en forma de negociaciones generales. Los demandantes han presentado un pliego de particulares respecto a los servicios que alegaron haber prestado, que contiene un gran número de partidas y se extiende por más de cuarenta y cinco páginas del récord impreso. No se alega en la demanda, ni aparece del pliego de particulares que los demandantes sostengan que hubo un contrato separado para cada partida de honorarios incluída en el pliego de particulares; y del mismo es manifiesto que la totalidad de los servicios envuelve comparativamente pocos asuntos, y todos se relacionan directa o indirectamente con las dos materias especificadas en la demanda, a saber, las patentes o la organización o funcionamiento de la compañía demandada.

"A mi juicio una interpretación lógica de las alegaciones de la demanda lleva a concluir que únicamente hubo un solo contrato de servicios en el presente caso, y el valor de los mismos se cacula en $100,000. Los abogados de la parte apelada tratan de sostener la orden de arbitraje sobre el fundamento de que todas las partidas de servicios y el valor de los mismos han sido controvertidos. Como los demandantes han presentado la cuestión, no será necesario determinar separadamente el valor de las varias partidas de servicios. Ellos calculan su reclamación a base del valor razonable de todos los servicios prestados, tomados conjuntamente. La cuestión a resolver se

limitará a si los demandantes fueron empleados y al valor de los servicios que prestaron, determinado como una sola partida, o averiguando el valor de los servicios relacionados con los asuntos específicos que atendieron en el curso de su empleo. No es aparente que esto envolverá el examen de una larga cuenta dentro del significado del artículo 1013 del Código de Enjuiciamiento Civil. El hecho de que será necesario considerar varias partidas de honorarios al determinar el valor de todos los servicios prestados al amparo de un contrato general no lleva consigo el examen de una larga cuenta ni hace que la acción deba someterse a arbitraje. (Prentice v. Hoff, 98 App. Div. 111; Russell v. McDonal, 125 id. 844; Feeter v. Arkenburgh, 147 N. Y. 237; Randall v. Sherman, 131 id. 669.) Una parte no puede ser privada de un juicio ante la corte o el jurado a menos que el caso caiga claramente dentro de las disposiciones de dicho artículo 1013 del Código de Enjuiciamiento Civil (Steck v. C. F. & I. Co., 142 N. Y. 236; Spence v. Simis, 137 id. 616); y se ha resuelto que sobre la parte que solicita el arbitraje recae el peso de probar afirmativamente con certeza razonable que el juicio envolverá el examen de una larga cuenta. (Smith v. London Assurance Corporation, 144 App. Div. 868.)

"Estos requisitos se cumplen con rigidez especial cuando los abogados solicitan que se sometan a arbitraje cuestiones relativas a sus reclamaciones de servicios profesionales. (Russell v. McDonald, supra.) Los apelados se fundan en el caso de Lewis v. Snook, 88 App. Div. 343; confirmado, 179 N.Y. 519; pero allí fué necesario determinar separadamente el valor de cuarenta y cinco diferentes partidas de servicios, y aun en ese caso el arbitraje fué sostenido por una escasa mayoría en la División de Apelaciones. La Corte de Apelaciones no expresó criterio alguno en cuanto a si era propia o no la orden de arbitraje en aquel caso, sino que meramente resolvió que el artículo 1013 del Código de Enjuiciamiento Civil confería autoridad para dictar la orden. Nuestro criterio es que los demandantes dejaron de demostrar que tuvieran derecho a un arbitraje."

Si como dicen los Sres López de Tord y Zayas Pizarro en su alegato "la corte inferior llegó a la conclusión de que los servicios prestados en este caso por los abogados formaban parte de un solo *retainer"*, tampoco resultan favorecidos en su contención.

En el caso de *Hedges* v. *Meth. Church of Williamsburgh,* 21 Misc. Rep. (N. Y.) 174, el Juez Russell se expresó así:

"Es claro que en una acción por honorarios que han de establecerse a base de un *quantum meruit,* no puede ordenarse un arbitraje compulsorio por la sencilla razón de que el demandante divide su reclamación surgida de un solo contrato (*retainer*), en numerosas partidas que pueden englobarse durante el juicio para hacer un solo cálculo de su valor. Randall v. Sherman, 131 N.Y. 669; Untermeyer v. Beinhauer, 105 id. 521; Feeter v. Arkenburgh, 147 id. 237.

"Es practicable para el jurado al oír los detalles de la cuenta por los servicios prestados en el litigio, agrupar el trabajo realizado y formar un estimado del valor del mismo en su totalidad, aunque se hubiesen dado pasos muy distintos al prestar los servicios. Mas el espíritu del código al diponer que se puede someter a arbitraje la cuestion relativa al examen de una larga cuenta es llevar el juicio ante un tribunal que puede leer de nuevo el testimonio relativo a las varias partidas y actuar en parte como contador y en parte como juez, para llegar a la suma que debe concederse finalmente como el total de las cuantías de cada servicio distinto. Se cometería una injusticia con un litigante si se solicitara que un memorándum de costas y honorarios, compuesto de muchas partidas que no pueden ser agrupadas en una sola, sea considerado por un jurado, ninguno de cuyos miembros está en posición de tomar nota de las varias partidas o refrescar su memoria mediante un examen del testimonio prestado antes de llegar a una conclusión, aun si el jurado estuviere tan bien capacitado como un síndico para juzgar el valor de tales servicios. Este criterio ha sido adoptado en un caso de gran importancia por las cortes de este estado y su valor hasta ahora no ha sido discutido. Ruger v. Belden, 27, Hun., 405; confirmado, 91 N. Y. 646.''

En la opinión de la corte, escrita por el Juez Hatch, en el caso de *Prentice* v. *Huff,* 98 App. Div. 115, se cita un número de decisiones que ponen de relieve la cautela con que proceden los tribunales cuando se quieren someter a arbitraje los servicios prestados por un abogado sobre la base de que los mismos constituyen una larga cuenta, y se dice que ''no puede encontrarse ningún caso donde se haya sostenido que los servicios de un abogado prestados en una acción o acciones, bajo uno o diferentes *retainers,* que simplemente envuelven partidas en conexión con las diversas gestiones practicadas en el litigio, constituyan una larga cuenta. Por el contrario, la partida en cada acción, aunque el servicio sea susceptible

de numerosas partidas, constituye esencialmente una sola partida con respecto a cada acción, y circunstancias especiales deben aparecer para excluir el caso de los efectos de esta regla.'' En el último párrafo de su opinión dice el Juez Hatch:

''También aparece que los servicios prestados por los demandantes no serán objeto de una contienda durante el juicio, aunque existe una negativa general que la autorizaría. La contención principal en el presente caso se refiere no al servicio en particular prestado, sino al valor del servicio. La controversia gira sobre esa cuestion y sobre la habilidad y diligencia desplegada por los abogados en su cumplimiento. La contrademanda presentada por la demandada Eunice E. Huff no presenta en forma alguna una larga cuenta. La cuestión que ella envuelve es simple. ¿Ejercitaron los demandantes en el cumplimiento del servicio la diligencia y habilidad que la ley exige? Si se contesta esta pregunta en la afirmativa, los demandantes tienen derecho a recobrar el valor razonable del servicio prestado. Si se contesta en la negativa, los daños y perjuicios que surgen de determinados actos de negligencia o ineptitud constituyen esencialmente una cuestión para el jurado. Para tal cuestión por sí sola no se permitiría un arbitraje, a no ser en circunstancias excepcionales. (Hoffman v. Sparling, 12 Hun., 83; Abbott v. Corbin, supra.) En los casos en que se permite un arbitraje de esta naturaleza deben estar envueltas circunstancias especiales. (Rowland v. Rowland, 141 N. Y. 485; Boisnot v. Wilson, 95 App. Div. 489.) Este caso no presenta tales cuestiones. Sobre la cuestión de diligencia y habilidad los demandados tienen derecho a un juicio por jurado a menos que existan circunstancias especiales, y a fin de conceder un arbitraje obligatorio en la teoría de que se halla envuelta una larga cuenta, ésta debe hacerse aparecer afirmativa y claramente. Tal cosa no se demuestra en este caso.''

El Código de Enjuiciamiento Civil de Nueva York dispone, como el nuestro, que puede ordenarse un arbitraje cuando la cuestión en controversia envuelve el examen de una larga cuenta. La jurisprudencia que hemos citado interpreta la disposición mencionada que aparece en el artículo 1013 de dicho cuerpo legal.

Reconocemos que en Puerto Rico, donde no hay derecho a juicio por jurado en casos civiles, hay más holgura para actuar

sobre la procedencia o improcedencia de un arbitraje que en el continente, donde los tribunales sienten el natural escrúpulo de no privar a una parte contra su voluntad del derecho a ser juzgada por un jurado, pero sostenemos que cuando se reclaman honorarios de abogado y se aduce la existencia de una larga cuenta, únicamente debe decretarse el arbitraje en casos excepcionales, ya que como dice la Corte de Nueva York en *Russell* v. *McDonald,* supra, una parte no puede ser privada de un juicio ante la corte o el jurado a menos que el caso caiga claramente dentro de las disposiciones del Código de Enjuiciamiento Civil.

No surge de los autos base alguna para decretar el arbitraje. Se reclama una suma alzada por todos los servicios profesionales que se dice han sido prestados, y ni siquiera se fija el valor de cada pleito, como apuntan los herederos y como debe hacerse por los abogados que solicitan el cobro de sus honorarios. "Que el abogado tiene el deber de presentar, en tanto en cuanto sea practicable, una cuenta detallada (*bill of particulars*) de sus servicios y reclamaciones en una acción contra su cliente, es una cuestión decidida (*well settled*); aunque parece necesario que se repita de vez en cuando." *Pace* v. *Amend,* 164 App. Div. 211. En el caso citado se dice que deben detallarse los servicios prestados, así como el valor de cada servicio, y que no se requiere la valoración de cada detalle, sino la de los servicios rendidos, lo cual puede hacerse mediante una suma alzada por cada pleito o procedimiento.

Para terminar vamos a copiar el siguiente párrafo de la opinión emitida en el caso de *Abbott* v. *Corbin,* 22 App. Div. 584:

"Adoptamos y aprobamos lo que dijo la corte en el caso de Martin v. Windsor Hotel Company (10 Hun., 304), como sigue: 'No hay regla fija que impida el arbitraje de la cuenta por honorarios presentada por un abogado a otro, mas las cortes deben tratar de evitar someter tales casos al arbitraje de miembros de la misma profesión cuando de la faz de la reclamación surge una buena razón para suponer que la oposición del cliente, basada en que ésta es exorbitante y opresiva, puede resultar bien fundada. No es debido a que tales

árbitros no harán amplia justicia y por igual a las partes, sino más bien debido a la impresión general de que sobre cuestiones de remuneración por servicios legales los letrados pueden tener prejuicios, y a veces los tienen, al determinar el valor de los mismos. No se elige a un médico para que sirva de árbitro en las cuentas de otros médicos, ni tampoco a un clérigo cuando un pastor demanda en cobro de los servicios por él prestados, y así sucesivamente en lo que a otros oficios y profesiones respecta, y ante los ojos del pueblo se considera altamente desagradable, y no sin alguna razón, que se elijan solamente abogados para determinar las reclamaciones de otros abogados. Es mejor para la profesión y para las cortes que esto no sea así, y el honor y el bienestar de la profesión exigen que no se crea que los abogados eluden someterse a un examen de sus cuentas por parte de un jurado que ha sido ilustrado con las opiniones de otros abogados que han servido como testigos y por las instrucciones de la corte.''

Los herederos arguyen que el arbitraje representaría otro gasto considerable para ellos, y que ''estos gastos podían ser evitados si se tramita la reclamación ante la propia corte en igual forma y manera como se han venido tramitando en Puerto Rico todas las demás reclamaciones por honorarios de abogado.''

Nos parece razonable todo esfuerzo que tienda a evitar mayores gastos a la administración judicial. La cuestión fundamental que aparece planteada en este caso es la cuantía fijada por los abogados a los honorarios, que los herederos consideran excesiva. Aparte de que, como ya hemos dicho, no procede en este caso el arbitraje, opinamos que la Corte de Distrito de Ponce puede resolver la cuestión controvertida sin grandes dificultades.

Por las razones expuestas, *debe anularse la orden dictada por la Corte de Distrito de Ponce en 27 de enero de 1933, y devolverse el caso a dicha corte para procedimientos ulteriores de acuerdo con los términos de esta opinión.*

### EN MOCION DE RECONSIDERACION
#### NOVIEMBRE 22, 1933

Los abogados López de Tord y Zayas Pizarro solicitan la reconsideración de la sentencia dictada por este tribunal el

día 7 de noviembre de 1933, anulando la orden de la Corte de Distrito de Ponce de 27 de enero de 1933 sobre arbitraje judicial. No se alegan, a nuestro juicio, fundamentos bastantes para decretar dicha reconsideración. Por lo tanto declaramos sin lugar la moción de los referidos abogados.

Se nos llama la atención, sin embargo, a que hemos citado erróneamente ciertas manifestaciones del Juez Todd con respecto a una relación detallada de servicios prestados por los Sres. López de Tord y Zayas Pizarro. Las palabras del Juez Todd a que se refieren los mencionados abogados son las siguientes:

"El Sr. Zayas Pizarro ha hablado de la cuenta, pero en realidad de verdad la firma López de Tord & Zayas Pizarro no ha presentado cuenta alguna; ha presentado un detalle de trabajos, pero no lo han valuado. A los efectos de la sucesión y de los herederos, me parece que eso les ha servido de muy poco porque ellos no pueden hacer un cálculo de cuánto vale ese trabajo, porque hay algunos abogados que ese mismo trabajo lo tasarían en un precio y otros en otro; el señor Zayas Pizarro debió haberlo comprendido y debió irle poniendo su precio, y hasta esa fecha la sucesión hubiera sabido más o menos cuánto valía ese trabajo, porque lo que hay es un detalle: En el pleito tal se ha hecho esto y esto, y así; un detalle de todo el trabajo y cartas y consultas, pero propiamente dicho no es una cuenta porque no se le ha dado valor, la parte interesada no le dió valor."

Las manifestaciones que anteceden, vertidas en 19 de mayo de 1932, se refieren a una relación detallada, sin valoración, que de sus trabajos profesionales, rendidos desde mayo 18 de 1928 al 30 de junio de 1931, presentaron los Sres López de Tord y Zayas Pizarro en 25 de agosto de 1931. Esta relación detallada de servicios, sin valoración, se presentó con motivo de haber solicitado los Sres. José María Franceschi y Pablo Vecchini de los abogados que rindiesen su cuenta. La rendición de esta cuenta se pidió por primera vez en mayo de 1930 según José María Franceschi y según los abogados en marzo de 1931. A esta relación detallada de servicios, sin valorar, que los abogados han calificado de cuenta, hizo referencia, según dijimos antes, el Juez Todd en sus manifesta-

ciones. Posteriormente los referidos abogados presentaron una relación detallada de todos sus servicios que valoraron en el precio alzado de $125,000. Los Sres. López de Tord y Zayas Pizarro sostuvieron en su alegato que el Juez Todd no manifestó que la relación de servicios de agosto 25 de 1931 no fuera una cuenta de honorarios. Las palabras del Juez Todd se explican por sí mismas. Manifestó además dicho Juez que a la relación mencionada únicamente le faltaban los últimos diez meses transcurridos desde su presentación, siendo una cuestión a determinar por los abogados si la valoración debía hacerse en detalle o en total.

Hecha esta aclaración, hacemos constar nuevamente que a nuestro juicio no hay base para la concesión de un arbitraje compulsorio, que la relación detallada de los servicios profesionales valorada en el precio alzado de $125,000 no constituye una larga cuenta, y que no concurren en este caso circunstancias excepcionales que justifiquen dicho arbitraje, de acuerdo con el criterio emitido en nuestra opinión y la jurisprudencia allí citada.